IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | BANKRUPTCY NO. 16-52493 |
| | § | |
| VAL COLE ENTERPRISES, LLC | § | |
| | § | |
| DEBTOR | § | |
| | § | CHAPTER 11 PROCEEDING |

## DEBTOR'S EMERGENCY APPLICATION TO SELL PROPERTY FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. §363 OF THE BANKRUPTCY CODE AND TO LEASE PROPERTY ON AN INTERIM BASIS

TO THE HONORABLE CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE:

Val Cole Enterprises, LLC., Debtor herein, file this Emergency Application to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. §363 of the Bankruptcy Code and respectfully represent the following:

### Background

1.      On October 31, 2017, the Debtor filed with this Court a voluntary petition under chapter 11 of title 11, United States Code (the "**Code**").  Debtor is operating as the Debtor in Possession.

### Summary of Relief Requested

2.      Debtor seeks authority to sell the Debtor's Real Property to MC Allstream, LLC and/or assigns (hereafter "Buyer" or "MC"). The Debtor owns record title to the Property.

3.      The sale contemplates that a closing will occur on or before February 28, 2017. Given the shorten time frame, the Debtor needs to move expeditiously.

### Jurisdiction & Venue

4.      The District Court has jurisdiction pursuant to 28 U.S.C. §1334(b). This matter has been referred to the Bankruptcy Court by General Order 2005-12. Venue is proper in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, as this is the location of the Debtor's business and bankruptcy filing.

### Core Proceeding

5.      This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (N) and (O). Since this is a core

proceeding, the Bankruptcy Court has constitutional authority to enter final orders regarding the Motion. Further, to the extent that the Court determines that it does not have the authority to enter a final judgment on a portion of or all of the Motion, the Debtor requests that the Court issue a report and recommendation for a judgment to the United States District Court for the Western District of Texas, San Antonio Division.

## The Property

6.      At the time of filing of the petition, Debtor's Schedules and Statement of Affairs identified that the Debtor owned the following real property with improvements locally known as 1901 Jim Brite Road, Pleasanton, Texas 78054 ABSA00762 W. Smith SV-949, consisting of approximately 373.48 acres. (hereafter referred to as the "Property").

## The Sale

7.      Debtor desires to sell the Property to MC for the sum of $1,300,000.00 Cash. A copy of the Commercial Contract is attached hereto as Exhibit "A".

8.      Debtor and MC's obligations to consummate the transactions contemplated in this Agreement shall be Conditioned upon the Bankruptcy Court's entry of the Approval Order.

9.      This sale is part of a funding mechanism for the Plan.  Debtor seeks to sell this property prior to confirmation of the Plan under 11 U.S.C. §363.  The test is whether there is a sound business reason for the sale; adequate and reasonable notice to interested parties has been provided; the sale price is fair and reasonable and the proposed buyer is proceeding in good faith.  *Medical Software Solutions, 286 B.R. 431.*

10.     The sale shall be made "as is, where is", with no representations or warranties of any kind, except as set forth in the Contract.

11.     There is a 14 day option period for the Buyer to terminate the contract for which MC has paid the sum of $1,000.00. Upon information and belief, this provision has been waived or resolved.

## The Debts and Liens

12.     The following entities assert a lien on the property:

        a.      Texas Champion Bank holds a lien on the property to secure a debt in the approximate amount of $1,180,000.00.

        b.      Atascosa County has filed a proof of claim (Claim No. 2) asserts a tax lien on the property to secure a debt in the approximate amount of $35,171.28.

### Sale Free and Clear

13.    In accordance with the terms of the Contract, Debtor proposes to sell the Property free and clear of all liens and encumbrances. Specifically, Debtor requests an order of this Court that finds and orders the following:

   a)    That MC is a good faith purchaser of the Property;

   b)    That the order provide that the Property is sold to MC free and clear of all liens, claims, preferential rights, interests and encumbrances whatsoever (except as expressly provided in this Agreement);

   c)    That the stay under Bankruptcy Rules 6004(g) and 6006(d) are waived and are not in effect; and

   d)    That this sale does not and will not subject or expose the Buyer, its successors or assigns, to any liability claim, cause of action or remedy by reason of such sale and transfer, including, without limitation, any claim, cause of action or remedy based on any theory of successor or transferee liability and that Buyer shall not assume any liability or obligation of the Debtor, fixed or contingent, disclosed or undisclosed, or any liability for such claims, debts, defaults, duties, obligations or liabilities of Seller of any kind or nature, whether known or unknown, contingent or fixed, all of which, to the extent that they existed prior to the Closing Date, are retained by the Debtor (the "Retained Liabilities")

### Realtor

14.    Starr Realty and Ranch is the Realtor for the Buyer. Michael Hermes of Team Hermes is the Seller's Realtor. The total Realtor fees to be paid is a 4% commission split equally between the Realtors.

### Disposition of Proceeds

15.    Debtor proposes that the first proceeds of sale be used to pay all normal and customary cost of closing including survey cost, title policy, and Realtor Fees, if any. Debtor seeks to pay all allowed debt identified in paragraph 12. The deadline to file proofs of claims is February 27, 2017.

### Good Faith

16.    In the exercise of its business judgment, Debtor has determined that the proposed sale to the Purchaser is, at present, the highest and best offer under the circumstances and will maximize the value of the Estate.

17.    In evaluating such a sale, a court must balance the need for flexibility with the concerns of the affected creditors. *In re Terrace Gardens Park Partnership*, 96 B.R. 707, 715 (Bankr. W.D. Tex. 1989). The Court must also determine that creditor's lien rights are adequately protected and that the

offer price is the highest price obtainable under the circumstances in the particular case. *Id.; In re Beker Indus. Corp.*, 63 B.R. 474, 477-78 (Bankr. S.D.N.Y. 1986).

### Other Contracts

18.      Debtor has considered other contracts in connection with the sale of the property. These contracts were for portions of the property. Debtor has not presented any of these contracts to the court for consideration and are currently rejected in favor of the proposed contract.

WHEREFORE, PREMISES CONSIDERED, Debtor prays that the Court approve this Emergency Application and to grant the relief requested herein and for such other and further relief as it may deem just.

Respectfully submitted,

_____/s/Dean W. Greer_____

DEAN W. GREER
2929 Mossrock, Suite 117
San Antonio, Texas 78230
(210) 342-7100
(210) 342-3633 - Telecopier
State Bar No. 08414100
Email: dwgreer@sbcglobal.net
Attorney for Debtor

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served on the parties listed below and upon all creditors including those Parties Requesting Notice listed on the Attached **Exhibit B** using the CM/ECF System or by First Class Mail, Postage Prepaid on the ____ day of February, 2017.

VAL COLE ENTERPRISES, INC.
1120 CARDINAL
PLEASANTON, TX 78064
**DEBTOR**

U.S. TRUSTEE
P. O. BOX 1539
SAN ANTONIO, TEXAS 78295-1539
**U.S. TRUSTEE**

Stephen K. Lecholop II
ROSENTHAL PAUERSTEIN
SANDOLOSKI AGATHER LLP
755 E. Mulberry Ave., Suite 200
San Antonio, Texas 78212

_____/s/Dean W. Greer_____
Dean W. Greer

Attachment Summary

A.      Contract

B.      List of all Creditors

The contract was only sent to those receiving ECF communications. The contract is on file with the Bankruptcy Clerk. Any other creditor may obtain a copy of the attachments from the Bankruptcy Court or by contacting this office.

_/s/Dean W. Greer_____

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
# FARM AND RANCH CONTRACT
11-2-2015

1. **PARTIES:** The parties to this contract are _____ Owner of Record _____ (Seller) and MC Allstream, LLC, and/or assigns _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** The land, improvements, accessories and crops except for the exclusions and reservations, are collectively referred to as the "Property".
   A. **LAND:** The land situated in the County of _____ Atascosa _____, Texas, described as follows: 1901 Jim Brite Road Pleasanton, Texas 78064 ABSA00762 W, Smith SV- 949, 373.49 Acres or as described on attached exhibit, also known as 1901 Jim Brite Rd. Pleasanton, TX 78064-6162

   (address/zip code), together with all rights, privileges, and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships.

   B. **IMPROVEMENTS:**
   (1) FARM and RANCH IMPROVEMENTS: The following permanently installed and built-in items, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.
   (2) RESIDENTIAL IMPROVEMENTS: The house, garage, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following permanently installed and built-in items, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.

   C. **ACCESSORIES:**
   (1) FARM AND RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ☒ portable buildings ☒ hunting blinds ☒ game feeders ☒ livestock feeders and troughs ☒ irrigation equipment ☒ fuel tanks ☒ submersible pumps ☒ pressure tanks ☒ corrals ☒ gates ☒ chutes ☐ other:
   (2) RESIDENTIAL ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) garages, (ii) entry gates, and (iii) other improvements and accessories.

   D. **CROPS:** Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.
   E. **EXCLUSIONS:** The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession: None
   F. **RESERVATIONS:** Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum or Special Provisions.

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing . . . . . . . . . . . . . . $ 300,000.00
   B. Sum of all financing described in the attached: ☒ Third Party Financing Addendum, ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum . . . . . . . . . $ 1,000,000.00
   C. Sales Price(Sum of A and B) . . . . . . . . . . . . . . . . . . . . . . . . . . $ 1,300,000.00
   D. The Sales Price ☒ will ☐ will not be adjusted based on the survey required by Paragraph 6C. If the Sales Price is adjusted, the Sales Price will be calculated on the basis of $ 3,481.00 per acre. If the Sales Price is adjusted by more than 10%, either party may terminate this contract by providing written notice to the other party within 3 days after the terminating party receives the survey. If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to the amount in ☐ 3A ☐ 3B ☒ proportionately to 3A and 3B.

4. **LICENSE HOLDER DISCLOSURE:** Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as a trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____

5. **EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit $ 10,000.00 as earnest money with Reliable Title 433 W. Oaklawn, Pleasanton, Tex 78064 as escrow agent, at (address). Buyer shall deposit additional earnest money of $ _____ with escrow agent within _____ days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.
Initialed for identification by Buyer MC and Seller _____

TAR 1701
Starr Realty and Ranch, 24 Jim Bowie Conces, TX 78028
Starr Taylor-Matthews

TREC NO. 25-11
MC Allstream

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com  Phone: 830.344.1978  Fax: 866.333.3426

*EXHIBIT A*

Contract Concerning      1901 Jim Brite Rd. Pleasanton, Tx 78064      Page 2 of 10      11/2/2015
(Address of Property)

6. **TITLE POLICY AND SURVEY:**

A. **TITLE POLICY:** Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by: _____ Reliable Title _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

  (1) The standard printed exception for standby fees, taxes and assessments.

  (2) Liens created as part of the financing described in Paragraph 3.

  (3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

  (4) The standard printed exception as to marital rights.

  (5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

  (6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements: ☒ (i) will not be amended or deleted from the title policy; or ☐ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☐ Seller.

B. **COMMITMENT:** Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If, due to factors beyond Seller's control, the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. **SURVEY:** The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only):

☒ (1) Within _____ 14 _____ days after the effective date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date. The existing survey ☒ will ☐ will not be recertified to a date subsequent to the effective date of this contract at the expense of ☐ Buyer ☒ Seller. If the existing survey is not approved by the Title Company or Buyer's lender(s), a new survey will be obtained at the expense of ☒ Buyer ☐ Seller no later than 3 days prior to Closing Date.

☐ (2) Within _____ days after the effective date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

☐ (3) Within _____ days after the effective date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

☐ (4) No survey is required.

D. **OBJECTIONS:** Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (6) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity: _____

Buyer must object the earlier of (i) the Closing Date or (ii) _____ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. **EXCEPTION DOCUMENTS:** Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Document | Date | Recording Reference |
|---|---|---|
| | | |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    MC Abstracts,

Contract Concerning      1901 Jim Brite Rd. Pleasanton, Tx 78064      Page 3 of 10     11/2/2015
                      (Address of Property)

F. **SURFACE LEASES:** Prior to the execution of the contract, Seller has provided Buyer with copies of written leases and given notice of oral leases (Leases) listed below or on the attached exhibit. The following Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title: _____

G. **TITLE NOTICES:**

  (1) **ABSTRACT OR TITLE POLICY:** Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

  (2) **STATUTORY TAX DISTRICTS:** If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

  (3) **TIDE WATERS:** If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

  (4) **ANNEXATION:** If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

  (5) **PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER:** Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

  (6) **PUBLIC IMPROVEMENT DISTRICTS:** If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

  (7) **TEXAS AGRICULTURAL DEVELOPMENT DISTRICT:** The Property ☐ is ☒ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture.

  (8) **TRANSFER FEES:** If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

  (9) **PROPANE GAS SYSTEM SERVICE AREA:** If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

 (10) **NOTICE OF WATER LEVEL FLUCTUATIONS:** If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

TAR 1701    Initialed for identification by Buyer    _MC_   and Seller _____      TREC NO. 25-11
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      MC Altstaom,



| Contract Concerning | 1901 Jim Brite Rd. Pleasanton, Tx 78064 | Page 4 of 10 | 11/2/2015 |
| --- | --- | --- | --- |
| | (Address of Property) | | |

**7. PROPERTY CONDITION:**

A. **ACCESS, INSPECTIONS AND UTILITIES:** Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.
NOTICE: Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. **SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):**
(Check one box only)
☐ (1) Buyer has received the Notice
☐ (2) Buyer has not received the Notice. Within _____ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☒ (3) The Texas Property Code does not require this Seller to furnish the Notice.

C. **SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS** is required by Federal law for a residential dwelling constructed prior to 1978.

D. **ACCEPTANCE OF PROPERTY CONDITION:** "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D (1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
(Check one box only)
☒ (1) Buyer accepts the Property As Is.
☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____

(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

E. **COMPLETION OF REPAIRS:** Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs.

F. **LENDER REQUIRED REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

G. **ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. **SELLER'S DISCLOSURES:** Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
(1) any flooding of the Property which has had a material adverse effect on the use of the Property;
(2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
(3) any environmental hazards or conditions materially affecting the Property;
(4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
(5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
(6) any threatened or endangered species or their habitat affecting the Property.

I. **RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ N/A _____. Buyer should review any residential service contract

TAR 1701    Initialed for Identification by Buyer _____ _MC_ and Seller _____ _____    TREC NO. 25-11
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    MC Alternum,

| Contract Concerning | 1901 Jim Brite Rd, Pleasanton, Tx 78064 | Page 5 of 10 | 11/2/2015 |
|---|---|---|---|
| | (Address of Property) | | |

for the scope of coverage, exclusions and limitations. The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.

    J. **GOVERNMENT PROGRAMS:** The Property is subject to the government programs listed below or on the attached exhibit: _____

Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

**8. BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

**9. CLOSING:**

    A. The closing of the sale will be on or before _____ February 28 _____, 2017 _____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

    B. At closing:

        (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.

        (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.

        (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.

        (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

        (5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has acquired the Property and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

**10. POSSESSION:**

    A. **Buyer's Possession:** Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.

    B. **Leases:**

        (1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.

        (2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)
Shared water well agreement conveys with property. The two Hunting blinds 4 game feeders (See exhibit A) will Not convey with other attachments. contract subject to court approval of the united states bankruptcy court case # 16-52493.

Contract Concerning       1901 Jim Brite Rd, Pleasanton, Tx 78064       Page 6 of 10       11/2/2015

(Address of Property)

**12. SETTLEMENT AND OTHER EXPENSES:**

A. The following expenses must be paid at or prior to closing:

  (1) Expenses payable by Seller (Seller's Expenses):

    (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.

    (b) Seller shall also pay an amount not to exceed $ _____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

  (2) Expenses payable by Buyer (Buyer's Expenses) Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**

A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.

B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Assessments are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

TAR 1701    Initialed for Identification by Buyer _____ *MC* and Seller _____     **TREC NO. 25-11**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    MC Allstream.

Contract Concerning _____ 1901 Jim Brits Rd, Pleasanton, Tx 78064 _____ Page 7 of 10   11/2/2015
(Address of Property)

18. **ESCROW:**

A. **ESCROW:** The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

B. **EXPENSES:** At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.

C. **DEMAND:** Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. **NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| To Buyer | To Seller |
|---|---|
| at: MC Allstream, LLC | at: _____ |
| PO Box 4949 | 1120 CARDINAL |
| Mission, Texas 78573 | PLEASANTON, TX 78064 |
| Phone: (956)773-8307 | Phone: 830-317-6600 |
| Fax: _____ | Fax: _____ |
| E-mail: allstreamsrv@yahoo.com | E-mail: jamie.downs @rocketmail.com |

TAR 1701   Initialed for identification by Buyer ____ MC ____ and Seller ____   TREC NO. 26-11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   MC Allstream,

Contract Concerning _____1901 Jim Brito Rd. Pleasanton, Tx 78064_____ Page 8 of 10    11/2/2015
                                         (Address of Property)

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

[X] Third Party Financing Addendum

[ ] Seller Financing Addendum

[ ] Addendum for Property Subject to Mandatory Membership in a Property Owners Association

[ ] Buyer's Temporary Residential Lease

[ ] Loan Assumption Addendum

[ ] Addendum for Sale of Other Property by Buyer

[ ] Addendum for "Back-Up" Contract

[ ] Addendum for Coastal Area Property

[ ] Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

[ ] Seller's Temporary Residential Lease

[ ] Short Sale Addendum

[ ] Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

[ ] Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

[ ] Addendum for Property in a Propane Gas System Service Area

[ ] Other (list): _____

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ 1,000.00 (Option Fee) within 3 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within ___14___ days after the effective date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee [X] will [ ] will not be credited to the Sales Price at closing. Time is of the essence for this paragraph and strict compliance with the time for performance is required.

**24. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's                                      Seller's
Attorney is: _____        Attorney is: _____

_____       _____

Phone: _____                   Phone: _____

Fax: _____                   Fax: _____

E-mail: _____                   E-mail: _____

EXECUTED the _____ day of _____, _____ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

_____              _____
Buyer   MC Allstream, LLC and/or assigns       Seller
        Melissa Cavazos
_Melissa Cavazos_                              _____
Buyer                                          Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12 188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-11. This form replaces TREC NO. 25-10.

TAR 1701    Initialed for identification by Buyer _____ _MC_ and Seller _____    TREC NO. 25-11
            Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    MC Allstream,

| Contract Concerning | 1901 Jim Brite Rd. Pleasanton, Tx 78064 | Page 9 of 10 | 11/2/2015 |
|---|---|---|---|
| | (Address of Property) | | |

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker **3.000%** of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Other Broker:
By: _____

Listing Broker:
By: _____

## BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKER'S FEES

| | | | |
|---|---|---|---|
| Starr Realty and Ranch | 428703 | Reliance Res Realty | |
| Other Broker | License No. | Listing or Principal Broker | License No. |
| Starr Matthews | 428703 | Mike Herrera Jr 383476 | |
| Associate's Name | License No. | Listing Associate's Name | License No. |
| | | ALKiRis | |
| Licensed Supervisor of Associate | License No | Licensed Supervisor of Listing Associate | License No. |
| 129 N. Camp St. | | 822 Colonad BIVD Ste 2 | |
| Other Broker's Office Address | | Listing Broker's Office Address | |
| Uvalde | Tx 78801 | SanAntonio TX 78230 | |
| City | State   Zip | City            State          Zip | |
| (830)261-1970 | (866)233-1426 | 210-341-1400 | |
| Phone | Fax | Phone                        Fax | |
| starrdaylor@gmail.com | | Mike@mikeherrera.com | |
| Associate's Email Address | | Listing Associate's Email Address | |

represents    ☒ Buyer only as Buyer's agent
         ☐ Seller as Listing Broker's subagent

| | |
|---|---|
| Selling Associate's | License No. |
| Licensed Supervisor of Selling Associate | License No. |
| Selling Associate's Office Address | Fax |
| City | State          Zip |
| Selling Associate's Email Address | |

represents    ☒ Seller Only
         ☐ Buyer Only
         ☐ Seller and Buyer as an intermediary

Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☐ Seller ☐ Buyer will pay Listing/Principal Broker ☐ a cash fee of $ _____ or _____ % of the total Sales Price; and (b) ☒ Seller ☐ Buyer will pay Other Broker ☐ a cash fee of $ _____ or ☒ ____ % of the total Sales Price. Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.

Brokers' fees are negotiable. Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.

Seller _____

Seller _____

Buyer    MC Allstream, LLC
         Melissa Cavazos
*Melissa Cavazos*
Buyer

Do not sign if there is a separate written agreement for payment of Brokers' fees.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     MC Allstream,

Contract Concerning _____ 1901 Jim Brite Rd. Pleasanton, Tx 78064 _____ Page 10 of 10     11/2/2015
                                        (Address of Property)

## OPTION FEE RECEIPT

Receipt of $ _____ (Option Fee) in the form of _____ is acknowledged.

Seller or Listing Broker _____     Date _____

## CONTRACT AND EARNEST MONEY RECEIPT

Receipt of ☐ Contract and ☐ $ _____ Earnest Money in the form of _____
is acknowledged.

Escrow Agent: _____     Date: _____

By: _____

_____     Email Address _____

Address _____     Phone _____

City _____ State _____ Zip _____     Fax _____

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

11-2-2015

## THIRD PARTY FINANCING ADDENDUM

### TO CONTRACT CONCERNING THE PROPERTY AT

__1901 Jim Brite Rd__ _____ __Pleasanton_____

(Street Address and City)

A. **TYPE OF FINANCING AND DUTY TO APPLY AND OBTAIN APPROVAL:** Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain approval for the financing, including but not limited to furnishing all information and documents required by Buyer's lender. (Check applicable boxes):

[X] 1. **Conventional Financing:**
  [X] (a) A first mortgage loan in the principal amount of $ __1,000,000.00_____ (excluding any financed PMI premium), due in full in _____30_____ year(s), with interest not to exceed __5.500__ % per annum for the first _____30_____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____1.000_____ % of the loan.
  [ ] (b) A second mortgage loan in the principal amount of $ _____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

[ ] 2. **Texas Veterans Loan:** A loan(s) from the Texas Veterans Land Board of $ _____ for a period in the total amount of _____ years at the interest rate established by the Texas Veterans Land Board.

[ ] 3. **FHA Insured Financing:** A Section _____ FHA insured loan of not less than $ _____ (excluding any financed MIP), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

[ ] 4. **VA Guaranteed Financing:** A VA guaranteed loan of not less than $ _____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

[ ] 5. **USDA Guaranteed Financing:** A USDA-guaranteed loan of not less than $ _____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan.

[ ] 6. **Reverse Mortgage Financing:** A reverse mortgage loan (also known as a Home Equity Conversion Mortgage loan) in the original principal amount of $ _____ (excluding any financed PMI premium or other costs), with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____ % of the loan. The reverse mortgage loan [ ] will [ ] will not be an FHA insured loan.

Initialed for Identification by Buyer _____ _MC_ and Seller _____

TAR 1901

TREC NO. 40-7

11-2-2015

Starr Realty and Ranch, 24 Jim Bowie Course, TX 78026    Phone: 830.281.2770    Fax: 866-233-3426    MC Atterton,
Starr Taylor-Matthew                          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Third Party Financing Condition Addendum Concerning                                      Page 2 of 2
_____1901 Jim Brite Rd, Pleasanton, TX 78064-6162_____
                                          (Address of Property)

B. **APPROVAL OF FINANCING:** Approval for the financing described above will be deemed to have been obtained when Buyer Approval and Property Approval are obtained.
   1. **Buyer Approval:**
      [X] This contract is subject to Buyer obtaining Buyer Approval. If Buyer cannot obtain Buyer Approval, Buyer may give written notice to Seller within ___30___ days after the effective date of this contract and this contract will terminate and the earnest money will be refunded to Buyer. If Buyer does not terminate the contract under this provision, the contract shall no longer be subject to the Buyer obtaining Buyer Approval. Buyer Approval will be deemed to have been obtained when (i) the terms of the loan(s) described above are available and (ii) lender determines that Buyer has satisfied all of lender's requirements related to Buyer's assets, income and credit history.
      [ ] This contract is not subject to Buyer obtaining Buyer Approval.
   2. **Property Approval:** Property Approval will be deemed to have been obtained when the Property has satisfied lender's underwriting requirements for the loan, including but not limited to appraisal, insurability, and lender required repairs. If Property Approval is not obtained, Buyer may terminate this contract by giving notice to Seller before closing and the earnest money will be refunded to Buyer.
   3. Time is of the essence for this paragraph and strict compliance with the time for performance is required.

C. **SECURITY:** Each note for the financing described above must be secured by vendor's and deed of trust liens.

D. **FHA/VA REQUIRED PROVISION:** If the financing described above involves FHA insured or VA financing, it is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise: (i) unless the Buyer has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $_____ ; or (ii) if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs.
   (1) The Buyer shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation or the reasonable value established by the Department of Veterans Affairs.
   (2) If FHA financing is involved, the appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The Buyer should satisfy himself/herself that the price and the condition of the Property are acceptable.
   (3) If VA financing is involved and if Buyer elects to complete the purchase at an amount in excess of the reasonable value established by the VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Price, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale may be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

E. **AUTHORIZATION TO RELEASE INFORMATION:**
   (1) Buyer authorizes Buyer's lender to furnish to Seller or Buyer or their representatives information relating to the status of the approval for the financing.
   (2) Seller and Buyer authorize Buyer's lender, title company, and escrow agent to disclose and furnish a copy of the closing disclosures provided in relation to the closing of this sale to the parties' respective brokers and sales agents identified on the last page of the contract.

Buyer MC Allstream, LLC                          Seller Owner of Record
*Melissa Cavazos*                                01/30/2017 14:12:11
Buyer and/or assigns                             Seller

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC No. 40-7. This form replaces TREC No. 40-6.

TAR 1901                                                     TREC NO. 40-7
                                                             11-2-2015

Label Matrix for local noticing
0542-5
Case 16-52493-cag
Western District of Texas
San Antonio
Wed Feb  8 10:20:38 CST 2017

Val Cole Enterprises, LLC
1120 Cardinal
Pleasanton, TX 78064-3902

U.S. BANKRUPTCY COURT
615 E. HOUSTON STREET, ROOM 597
SAN ANTONIO, TX 78205-2055

Atascosa County
c/o Don Stecker
711 Navarro, Suite 300
San Antonio, TX 78205-1749

Atascosa County Tax
1001 Oak St.
Jourdanton, Texas 78026-2849

Attorney General of the U.S.
10th & Const. Ave. N.W.#5111
Washington, D.C 20530-0001

City of Jourdanton
c/o Lee Gordon
P.O. Box 1269
Round Rock, Texas 78680-1269

Gaucho Holdings, LLC
1721 Clover Ridge
Pleasanton TX 78064-1748

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

RD Wells Investments
PO Box 216
Pleasanton TX 78064-0216

Robert A. Rosenthal, Attorney
755 East Mulberry Ste. 200
San Antonio, TX 78212-4285

Security Service Federal Credit Union
16211 La Cantera Parkway
San Antonio, Texas 78256-2419

Security State Bank
1194 W. Oaklawn
Pleasanton, TX 78064-3958

Security State Bank
c/o James A. Hoffman
Clemens & Spencer
112 E. Pecan - Ste. 1300
San Antonio, TX 78205-1531

Texas Champion Bank
405 West Oaklawn
Pleasanton, TX 78064-4050

Texas Workforce Commission
P.O. Box 12548 MC-008
Austin, TX 78711-2548

U. S. Attorney/IRS
601 N. W. Loop 410, Suite 600
San Antonio, Texas 78216-5512

U. S. Trustee
615 E. Houston St. Room 533
San Antonio, Texas 78205-2055

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
PO Box 1539
San Antonio, TX 78295-1539

Dean William Greer
2929 Mossrock, Suite 117
San Antonio, TX 78230-5141

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
P. O. Box 21126
Philadelphia, PA 19114

End of Label Matrix
Mailable recipients    19
Bypassed recipients     0
Total                  19

